JUAN FUENTES ET AL., Plaintiffs and Appellants, v. ANTERO APONTE, Defendant and Appellee.

No. 8682. Argued November 2, 1943.—Decided December 22, 1943.

*F. González Fagundo* for appellants. *E. Arjona Siaca* and *A. Figueroa Rivera* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

By deed executed on January 3, 1929, Antero Aponte constituted a voluntary mortgage on a house and lot owned by him, in favor of Francisco Fuentes, to secure a $400-loan with interest thereon at one per cent monthly, for a period of three months. At the end of said deed and next to clause seven, in which the notary stated that the parties accepted the deed and that he had cautioned them as required by law, an eighth clause was added, reading as follows: "It is agreed by the parties hereto that the sum of $125 shall be paid by Aponte to cover expenses and attorney's fees in case of judicial recovery by the creditor."

The loan having matured and not having been paid, the creditor brought summary foreclosure proceedings for its recovery, said proceedings terminating with the adjudication of the property to the complainant creditor. Immediately after the adjudication, that is to say, in the month of August, 1934, the defendant debtor entered into a contract of lease with the new owner of the property, his former creditor, the lease rent being $8 per month, which he paid until

the end of 1938. The total of the rentals paid amounted to $424. Subsequently, the lessee and former owner of the property brought an action in the lower court seeking the annulment of the foreclosure proceedings, which action was decided in favor of the plaintiff by a judgment rendered on December 18, 1941, on the ground that the $125 agreed upon as attorney's fees had been claimed within the foreclosure proceedings, inasmuch as such sum was not secured by the mortgage, as was held by the court. Upon the annulment of the foreclosure proceedings, the heirs of the creditor Francisco Fuentes, appellants herein, brought an action in the lower court for the recovery of the $400 that their predecessor in interest had lent to the appellee herein, and prayed that the $125 which the defendant had undertaken to pay for attorney's fees in case of judicial recovery be incorporated in the amount of the loan. In his answer the defendant admitted that a loan had existed but stated that the obligation had been paid, and prayed for a judgment dismissing the complaint with costs, expenses, and attorney's fees on the plaintiffs.

Relying on the facts as set forth and on the conclusions of law to which we shall presently refer, the action was dismissed.

 In the opinion in support of the judgment appealed from, the judge below discusses at length the merits of the case and reaches the conclusion that the plaintiffs, as appears from the evidence, have no cause of action, but immediately afterwards he considers the case from another angle and holds that besides the conclusion reached by him that the obligation claimed had been fully met, the court never acquired jurisdiction of the case inasmuch as the amount involved was less than $500. It seems logical that if the court never had jurisdiction of the case, any pronouncements made regarding the merits thereof is *coram non judice*.

We will first consider the jurisdictional question.

It is alleged in the complaint that the defendant undertook to pay to the ancestor of the plaintiffs the sum of $400 within three months counted from January 3, 1929, with interest thereon at one per cent monthly, and that said obligation had not been satisfied. As already stated by us, nothing is stated in the body of the complaint regarding the undertaking to pay attorney's fees, but in the prayer it is stated as follows: "For which reason it is prayed that judgment be rendered against Antero Aponte for $400 as principal plus $125 stipulated in the loan deed for the payment of costs and attorney's fees in case of judicial recovery."

It has been repeatedly held by this court as well as by the continental courts that the prayer of the complaint often serves for determining, in doubtful cases, the nature of the action prosecuted. However, the sufficiency of the complaint is not dependent upon the prayer, but on the facts alleged as constituting a cause of action. Likewise, the jurisdictional amount must appear from the averments of the complaint, and for this reason, if the jurisdictional amount does not appear from said averments, the fact that a judgment is prayed for in an amount which was not claimed in the complaint should not be taken into account for the purpose of determining the jurisdictional amount. 1 Bancroft's Code Pleading, §188 and cases cited; 1 Bancroft's Code Practice and Remedies, §629 and cases cited.

In the case at bar, however, the defect in the complaint was not brought up for consideration by the court through demurrer or in any other way before the case was considered on its merits. If a demurrer to the complaint had been filed on this ground, we would have agreed, in accordance with the authorities cited, with the court below in that the amount claimed in the complaint was $400 and therefore insufficient to vest the lower court with jurisdiction. But such was not the case. The court itself, *sua sponte*, after the admission of the evidence and submission of the case, pro-

ceeded to consider the sufficiency of the complaint without bearing in mind that the defect had been cured by the evidence offered by the defendant himself without objection from the plaintiff. Said evidence consisted of some part of the record in case No. 2929 of the lower court (Tr. of Ev., p. 14) from which it appeared that the obligation now claimed in the complaint in the present case amounted to $400 plus an additional credit of $125 for costs and attorney's fees in case of judicial recovery.

However, the lower court went even further and, notwithstanding its ruling that it was without jurisdiction by reason of the amount, went to the merits of the case and concluded that the $400 obligation had been paid, as alleged by the defendant. It then held that the evidence showed that the defendant did not owe the principal of the obligation for $400; that the $125 of the accessory obligation for costs and attorney's fees was contracted for the event that the creditor should be compelled to claim an existing obligation, but not in the case of a claim for an obligation already paid in full; and congruently with this reasoning it held that the plaintiff was not entitled to recover in the instant case the accessory credit claimed in the complaint; that if the $125 item were eliminated, the claim was reduced to $400, which is an insufficient amount to vest the lower court with jurisdiction.

The judge below in his reasoning overlooks the fact that two items were claimed: one for $400, which is the principal, and another for $125 for costs and attorney's fees, which constitutes a claim accessory to the principal. If the plaintiffs prove partially or wholly the principal of the credit, they would *ab initio* be entitled to a judgment for the amount actually owed, plus the $125 of the accessory credit. If they fail to do so, the complaint must be dismissed. Therefore, the two credits are inseparable and fall or subsist together; but in either case the sum claimed in

the complaint, as amended by the evidence, will always amount to $525.

■ This question having been disposed of, we will go into the merits of the case.

The lower court holds that, by setting aside the summary foreclosure proceedings, the *status quo* prior to the commencement of the proceedings was restored; that such being the case the lease rentals paid by Aponte to Fuentes or to his heirs during the years 1934 to 1938 inclusive, were paid as the lease rental of a property belonging to the lessee, and that therefore the lessor had received the same without being entitled thereto; that under such circumstances Antero Aponte is entitled to have the amount of $424 credited against the $400 loan, and by doing so said $400 credit claimed in the complaint turns out to have been more than paid.

Possibly, the lease contract referred to by the lower court was entered into under the erroneous belief that the lessor had a valid title to the property. This error, however, is not one to invalidate the consent. Its invalidation required the error to be one of those included in Section 1218 of the Civil Code which prescribes:

"In order that the error may invalidate the consent, it must refer to the substance of the thing, which may be the object of the contract, or to those conditions of the same, which should have been principally the cause of its execution.

"An error with regard to the person shall invalidate a contract only when the consideration of the person should have been the principal cause of the same.

"A mere error of account shall only give rise to its correction."

The Romans understood by error bearing upon the substance of the thing that which affects the physical nature thereof, and Pothier said that "the error invalidates the agreement not only where it affects the thing itself but also where it bears upon the qualities of the thing which the con-

tracting parties had especially in view and which form part of its substance." *Enciclopedia Jurídica Española,* vol. 14, p. 440.

Planiol and Ripert discuss the error *in the substance* in the following terms:

"Error in the substance is ground for the nullity of the lease. The difficulty lies, of course, in determining whether or not the contemplated quality is substantial. It must be ascertained whether, in fact, such quality is the one which led the party who was injured by the error to execute the contract. There is error in the substance in those cases in which somebody leases arable land thinking that it is pasture land. In this connection it has been held that there must be considered as substantial the error bearing upon the question as to whether the immovable was fit for the use for which it was leased. The error concerning non-substantial qualities is immaterial to the validity of the lease." Practical Treaties of French Civil Law, vol. 10, p. 498.

Dealing with the same subject, Manresa in his commentaries on §1266 of the Spanish Civil Code, identical with §1218 of our code, says:

"This is why the error which always invalidates it (the consent) is that which bears upon the substance of the thing and, by substance we mean not only the matter constituting the same but, in general, the nature thereof, that which distinguishes it, either generically or specifically, from others." 8 Manresa, Spanish Civil Code, p. 646.

Lastly, the *Enciclopedia Jurídica Española,* volume and page *supra,* thus illustrates with practical examples the error bearing upon the substance or qualities of the thing:

"To a collector of antiques, the substance of a thing purchased (a numantine amphora, for example) will be the fact that the same belongs to that period; to somebody else whose hobby is the collection of objects which belonged to a person of note, the fact that the same was used or owned by such person. So that the physical nature of the thing contracted, its form, its origin, or its source, its ordinarily secondary qualities and, finally, everything that according to the inten-

tion of the parties to a contract might acquire the juridical sense of the substance of the thing, will have such character.''

The error, as we have seen, did not bear upon the substance of the thing. Nor upon such conditions of the thing as might especially lead to the execution of the contract. It bore upon the title of the parties to the thing; but said error is not one of those which invalidate the consent, as was held by the Supreme Court of Spain in its judgment of February 12, 1898.

■■■■■ It having been shown that no error existed to invalidate the consent, it is now proper to discuss whether the lease contract is void for lack of consideration. Section 1213 of the Civil Code.

The judgment setting aside the foreclosure proceedings had the legal effect of setting aside *ab initio* the ownership title acquired by Fuentes and of restoring the *status quo* prior to the rendering of the judgment in said foreclosure proceedings. In contemplation of the law, Aponte never forfeited his right to the enjoyment and use of the property. This being so, by paying the rentals he did not receive any consideration from Fuentes to which he was not entitled as the owner of the leased property. Therefore, the lease contract was void for lack of consideration. However, notwithstanding such payment not due, Aponte can not set up the sum so paid as compensation with respect of the claim of Fuentes, successors in interest, simply because the payment effected by Aponte, although not due, was paid under an error of law. *Silva* v. *Heirs of Caratini*, 51 P.R.R. 754.

For the foregoing reasons, the judgment appealed from should be reversed and another rendered in lieu thereof ordering the defendant to pay to the plaintiffs the sum of $400 as principal, with legal interest thereon from the filing of the complaint on March 30, 1942, plus $125 agreed upon for costs and attorney's fees.

Mr. Justice Snyder did not participate herein.